UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| R. WAYNE KLEIN, the Court Appointed Receiver of Trigon Group, Inc., and for the assets of Daren L. Palmer,<br><br>                Plaintiff,<br><br>   v.<br><br>DOYLE BECK, an individual,<br><br>               Defendant. | Case No. 4:10-CV-0088-EJL-REB<br><br>**MEMORANDUM DECISION AND ORDER** |

     Pending before the Court in the above-entitled matter are cross motions for summary judgment and a motion to strike Defendant's motion for summary judgment. Having fully reviewed the record, the Court finds that the facts and legal arguments are adequately presented in the briefs and record. Accordingly, in the interest of avoiding further delay, and because the Court conclusively finds that the decisional process would not be significantly aided by oral argument, this matter shall be decided on the record before this Court without oral argument.

**MEMORANDUM DECISION AND ORDER - 1**
12ORDERS/Klein v. Beck

**FACTUAL BACKGROUND**

Plaintiff R. Wayne Klein ("Klein" or "Receiver") was appointed as a receiver over the assets of Trigon Group, Inc. ("Trigon") and Daren Palmer ("Palmer"). It appears at this stage in the litigation it is undisputed that Palmer was running a "ponzi scheme" from investments made in Trigon as early as 2002 and continuing through 2008.

"A Ponzi scheme is an arrangement whereby an enterprise makes payments to investors from the proceeds of a later investment rather than from profits of the underlying business venture, as the investors expected. The fraud consists of transferring proceeds received from the new investors to previous investors, thereby giving other investors the impression that a legitimate profit making business opportunity exists, where in fact no such opportunity exists." *Agricultural Research and Technology Group, Inc., v Palm Seedlings Partners–A*, 916 F.2d 528, 531 (9th Cir. 1990) (citing *Cunningham v. Brown*, 265 U.S. 1, 44 (1924)).

The Court takes judicial notice that due to his activities in the ponzi scheme, Palmer was convicted of fraud and money laundering and received a sentence from this Court of 96 months imprisonment, three years supervised release, 200 hours community service, $29,842,731 in restitution and $200 special assessment. *See United States v. Palmer*, Crim. Case No. 11-130-E-EJL, Dkt. 23.

The Receiver filed the Complaint in this action seeking to recover monies from Doyle Beck ("Beck") that the Receiver maintains were paid from Trigon assets but for

**MEMORANDUM DECISION AND ORDER - 2**
12ORDERS/Klein v. Beck

which Beck gave no value to Trigon. Beck maintains he never made an investment in Trigon and he merely made a personal loan to Duane Yost ("Yost") in the amount of $500,000 with an interest rate of 20% on or about October 4, 2006. There is no written documentation concerning the loan. Beck claims he had known Yost for several years and that Yost told Beck he was using the loan proceeds to invest in ventures including with Yost's brother-in-law, Palmer. Beck did not put any restrictions on how Yost was to use the loan proceeds. Yost asked Beck to make the check for $500,000 out to "Yost Enterprises."

Between April and November 2007, Beck received a total of $605,000 from Yost or entities controlled by Yost which represented a principal payment and interest payments on the loan. Beck was repaid the principal loan amount and interest by Yost on checks drawn on one of the entities controlled by Yost, not Trigon. Beck claims to have no knowledge of the specific activities of Palmer, Trigon or Yost. Beck claims he had no knowledge of the source of the monies Yost used to repay the loan and to pay the interest owed on the principal.

Yost filed an affidavit in this case indicating that the $500,000 he received from the loan from Beck made out to Yost Enterprises was then deposited $100,000 to Centurian, LLS; $152,000 to Yost Development; $100,000 into Yost Enterprises; and $175,000 into Yost Leasing. Yost says he ultimately invested the entire $500,000 through "book entries."

**MEMORANDUM DECISION AND ORDER - 3**
12ORDERS/Klein v. Beck

The Receiver maintains that he has been unable to trace the investment by Yost of the $500,000 in loan proceeds. While there may have been "book entries" made by Yost, the Receiver does not show any of the loan proceeds actually being received by Trigon. The Receiver maintains that Yost was very involved in Trigon and the ponzi scheme being run by Palmer and speculates that Yost may have been running his own ponzi scheme with his own investors and Trigon investors. The Receiver maintains Yost's knowledge and involvement in the fraudulent activities of Trigon prevents any monies received by Yost or entities he owned or controlled from being legitimate transferees of Trigon monies.

The fact that Yost was investing via "book entries" instead of actual deposits of monies seems to indicate that Yost was very involved in Trigon's activities.

The Receiver has traced the monies used to repay the loan and all the interest payments (except the one on April 3, 2007 for $50,000) back to monies Yost received from Trigon. Therefore, the Receiver seeks to have $555,000 ($605,000 less the one interest payment not traced back to Trigon in the amount of $50,000) returned from Beck to the innocent investors of Trigon since Trigon did not receive $555,000 in value from either Yost or Beck.

Beck claims Yost was an initial transferee so that any monies he received from Yost or Yost entities are not voidable transfers as he took the payments in good faith and for a reasonably equivalent value. Klein argues Beck cannot raise the good faith defense

**MEMORANDUM DECISION AND ORDER - 4**
12ORDERS/Klein v. Beck

as Yost was an insider in the Trigon ponzi scheme. Alternatively, the Receiver argues even if there was no actual fraudulent transfer, there was a constructive fraudulent transfer as no reasonable value was provided to Trigon for the $550,000 paid to Yost (and then to Beck) and a constructive fraudulent transfer does not have a good faith defense.

The extent of Yost's involvement and investment in Trigon is discussed by the Receiver in his affidavit, but the affidavit of Yost does not detail his involvement and merely indicates he had no idea of what Trigon or Palmer were doing.

The Court takes judicial notice that Yost and the following entities allegedly owned and controlled by Yost have been sued by the Receiver in *Klein v. Yost*, civil case no. 10-41-E-EJL: Centurion, LLC, an Idaho limited liability company, Dual Funding, LLC, an Idaho limited liability company, Yost Development Company, LLC, in Idaho limited liability company, Yost Enterprises, an Idaho limited partnership and Yost Leasing, Inc., an Idaho corporation. Collectively referred to as the "Yost entities." Neither Yost nor any of the above-named Yost entities have appeared in the civil case no. 10-41-E-EJL.

Plaintiff's first cause of action is for avoidance and recovery of fraudulent transfers pursuant to Idaho Code §§ 55-913, 55-914 and 55-916. Plaintiff's second cause of action is for constructive trust and unjust enrichment or other provisional remedies pursuant to Idaho Code § 55-916(b) and (c).

**MEMORANDUM DECISION AND ORDER - 5**
12ORDERS/Klein v. Beck

# ANALYSIS

## 1. Standard of Review for Motion for Summary Judgment

Summary judgment is appropriate where a party can show that, as to any claim or defense, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). One of the principal purposes of the summary judgment "is to isolate and dispose of factually unsupported claims . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). It is "not a disfavored procedural shortcut," but is instead the "principal tool[ ] by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources." *Id*. at 327.

"[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247-48 (1986). Material facts are those that may affect the outcome of the case. *See id*. at 248.

The moving party is entitled to summary judgment if that party shows that each issue of material fact is not or cannot be disputed. To show the material facts are not in dispute, a party may cite to particular parts of materials in the record, or show that the materials cited do not establish the presence of a genuine dispute, or that the adverse party is unable to produce admissible evidence to support the fact. Fed. R. Civ. P.

**MEMORANDUM DECISION AND ORDER - 6**
12ORDERS/Klein v. Beck

56(c)(1)(A)&(B); *see T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (citing *Celotex*, 477 U.S. at 322). The Court must consider "the cited materials," but it may also consider "other materials in the record." Fed. R. Civ. P. 56(c)(3).

Material used to support or dispute a fact must be "presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). Affidavits or declarations submitted in support of or opposition to a motion "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

The Court does not determine the credibility of affiants or weigh the evidence set forth by the non-moving party. All inferences which can be drawn from the evidence must be drawn in a light most favorable to the nonmoving party. *T.W. Elec. Serv.*, 809 F.2d at 630-31 (internal citation omitted).

Rule 56(e)(3) authorizes the Court to grant summary judgment for the moving party "if the motion and supporting materials–including the facts considered undisputed–show that the movant is entitled to it." The existence of a scintilla of evidence in support of the non-moving party's position is insufficient. Rather, "there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby*, 477 U.S. at 252.

## 2. *Cross Motions for Summary Judgment*

This is a case where the material facts about what was known and done by Beck, Yost, Palmer and Trigon are clearly disputed and summary judgment cannot be granted. Although Beck claims he was merely making a loan to Yost, what Yost did with the loan proceeds and the source of monies used to repay Beck are impacted by the extent to which Yost was involved in Trigon and Palmer's ponzi scheme activities. As stated earlier, Yost's limited view of his involvement in Trigon and the Receiver's investigation of the activities of Trigon, Palmer and Yost paint two very different scenarios. A jury will have to hear all the facts, weigh the credibility of the witnesses, and determine what was done with the loan proceeds from Beck, Yost's knowledge and involvement in the fraudulent activities of Trigon, whether the loan funds were ever actually invested in Trigon, etc. Simply put, because of the disputed material facts, summary judgment cannot be granted on either parties' motion for summary judgment.

The Court does find that clarification of the law that will be applied to this case would be helpful in narrowing the issues for trial. Under Idaho Code § 55-913(1)(a) an actual fraudulent transfer is a transfer made with "intent to hinder, delay or defraud any creditor of the debtor." Payments made from ponzi scheme funds are presumed to be made with the "actual intent to defraud." *Donnell v Kowell*, 533 F.3d 762, 770 (9th cir. 2008). There is a "good faith defense" to an actual fraudulent transfer under Idaho Code § 55-917(1): "[a] transfer . . . is not voidable under Idaho Code § 55-913(1)(a), against a

person who took in good faith and for a reasonably equivalent value or against any subsequent transferee or oblige." This means there are two elements to a good faith defense: Beck received the monies from Yost in "good faith" and Trigon (who paid the monies to Yost or Yost entities used to repay Beck) received reasonably equivalent value.

The Court finds the only value that is relevant is the value that was received by Trigon who provided the monies paid to Beck, not the value to any third party. *See In re Fox Bean Co., Inc.*, 287 BR. 270, 281 (Bankr. D. Idaho 2002) ("a debtor's payment of the debt of another does not constitute a reasonably equivalent value when the debtor is not obligated on the debt."

Further, the Court agrees with the Receiver that the test of whether Beck acted in "good faith" is based on an objective test, not a subjective test. *In re Agricultural Research and Technology Group, Inc.*, 916 F.2d 528, 535-36(9th Cir. 1990), the court stated "courts look to what the transferee objectively 'knew or should have known' in questions of good faith, rather than examining what the transferee actually knew from a subjective standpoint."

The second theory of recovery by the Receiver in this case, is a constructive fraudulent transfer pursuant to Idaho Code § 55-913(1)(b) which occurs when a transfer is made "without receiving a reasonably equivalent value in exchange for the transfer." The Receiver seeks additional remedies under Idaho Code §§ 55-916(b) and (c) asking

**MEMORANDUM DECISION AND ORDER - 9**
12ORDERS/Klein v. Beck

that the Court impose a constructive trust in favor of the Receiver over all monies and assets obtained with the monies received by Beck from payments by Trigon to Yost or Yost entities.

The Court notes, there is no good faith defense to a constructive fraudulent transfer. The elements for a constructive fraudulent transfer are: Trigon was insolvent at the time of the transfer of monies to Yost or Yost entities (which was then paid to Beck) and Trigon received no reasonably equivalent value in return for the monies paid to Beck.

As to any unjust enrichment theory of recovery contained in Count two, the Court finds unjust enrichment occurs where a defendant receives a benefit which would be inequitable to retain without compensating the plaintiff to the extent that retention is unjust. *Vanderford Co., Inc. v. Knudson*, 165 P.3d 261, 272 (Idaho 2007) (citations omitted). A prima facie case of unjust enrichment consists of three elements: (1) there was a benefit conferred upon the defendant by the plaintiff; (2) appreciation by the defendant of such benefit; and (3) acceptance of the benefit under circumstances that would be inequitable for the defendant to retain the benefit without payment to the plaintiff for the value thereof. *Id.* (citing *Aberdeen-Springfield Canal Co. v. Peiper*, 982 P.2d 917, 923 (1999)).

The doctrine of unjust enrichment is not permissible where there is an enforceable express contract between the parties which covers the same subject matter. *Vanderford*,

*supra*. Equity does not intervene when an express contract prescribes the right to compensation. *Id.*

The Court finds the Ninth Circuit has established the "dominion test" to determine whether or not Yost was an initial transferee. *In Re Inconet, Inc.*, 463 F.3d 1064 (9th Cir. 2006). An "initial transferee" is one who has "dominion over the money or other asset, the right to put the money to one's own purposes." *Id.* at 1070. "The inquiry focuses on whether an entity had legal authority over the money and the right to use the money however, it wished." *Id.* (citations omitted.)

In this case, it is disputed whether Yost knew of the ponzi scheme and whether Yost could ever have reasonably believed he had legal authority or a legal right to use Trigon monies to pay off his debt owed to Beck. If Yost did not have the legal right to the Trigon ponzi scheme monies, then any transfer of Trigon monies to Beck by Yost or Yost entities may not be a transfer to an "initial transferee." If Yost is not a valid "initial transferee," then Beck would then be unable to argue he was a "subsequent transferee" who took in good faith. This is a factual finding to be made by the jury.

In summary, the Court finds the elements and requirements for actual and constructive fraudulent transfers is not really at issue in this case. Instead, there is a disagreement on the application and interpretation of certain facts to the law. These disagreements about the facts will have to be resolved by the jury. Jury instructions will be critical in this case and the parties are urged to work together to submit proposed jury

**MEMORANDUM DECISION AND ORDER - 11**
12ORDERS/Klein v. Beck

instructions that will clearly state the law and allow each side to argue its theory of the case within the confines of the applicable law.

### 3. *Motion to Strike*

Plaintiff seeks to strike the Defendant's motion for summary judgment (Dkt. 25). Having reviewed the motion and the Court having determined that genuine issues of material fact exist, the Court finds in the interests of judicial economy the Court need not address this motion to strike as the matter will be proceeding to trial.

## ORDER

**IT IS ORDERED:**

1) Defendant Beck's Motion for Summary Judgment (Dkt. 17) is **DENIED**.

2) Plaintiff Klein's Motion for Summary Judgment (Dkt. 23) is **DENIED**.

3) Plaintiff Klein's Motion to Strike (Dkt. 25) is **DENIED**.

4) This matter shall be set for trial on **Tuesday, July 31, 2012 at 9:30 a.m. at the Federal Courthouse in Pocatello, ID.** The pre-trial deadlines for trial briefs, exhibits, witness lists, and proposed voir dire previously set by the Court are to applied to this new trial date. The Court will modify the motions in limine deadline set forth in the Scheduling Order, Dkt. 9. Motions in limine, if any, shall be filed on or before **June 15, 2012** and responses, if any, to motions in limine shall be filed on or before **July 2, 2012.**

**SO ORDERED.**

DATED: March 22, 2012

*/s/ Edward J. Lodge*

**Honorable Edward J. Lodge**
**U. S. District Judge**